# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:20-cv-00601-MR

| | | | |
|---|---|---|---|
| TRACEY TERRELL GRADY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| D. ROGERS, et al., | ) | ORDER | |
| | ) | | |
| Defendants. | ) | | |
| _____ | ) | | |

**THIS MATTER** is before the Court on initial review of the Amended Complaint. [Doc. 14]. The Plaintiff is proceeding *in forma pauperis.* [Doc. 10].

The *pro se* Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Union County Jail ("UCJ") where he is a pretrial detainee on charges including second-degree kidnapping and forcible rape.[1] [Doc. 1]. Before the Complaint was screened for frivolity, the Plaintiff filed a "Motion to Legally Amend … [and] Consolidate…" which was granted, and the Amended Complaint was

_____

[1] This information was gleaned from the Union County Sheriff's Office website. See http://sheriff.co.union.nc.us/jailinmates.aspx (last accessed Dec. 6, 2021); Fed. R. Evid. 201.

accepted as timely filed. [Docs. 13, 17]. The Amended Complaint is now before the Court for initial review.

In the Amended Complaint, the Plaintiff names as Defendants in their individual capacities: Sheriff Eddie Cathey; and the following "Jail Staff:" D. Rogers, a captain; J. Dennis, a lieutenant; K. Martin, a corporal;[2] Megan Kimball, V.L. Adcock, B.W. Purser, and J. Philemon,[3] sergeants; and J.R. Strickland, Z.R. Panek, C. McSheehan, A. Knox, FNU Grooms, FNU Hamilton, D. Rucker, H.W. Younts,[4] FNU Keziah, T. Knotts, D. Burns, FNU Dorlando, C.A. Eubanks, C.T. Kiker, officers. [Doc. 14 at 1, 8-10]. He asserts claims of "cruel and unusual punishment;" "failure to shield and protect;" "assault and excessive force;" "due process violation[s];" "mail stop;" and "deliberate indifference base[d] on racial discrimination." [Doc. 14 at 9]. The Plaintiff alleges that he sustained physical and emotional injuries as a result of the Defendants' actions and is in imminent danger of being

---

[2] The Plaintiff also refers to this Defendant as "Corporal K. Morton." [Doc. 14 at 11].

[3] The Plaintiff also refers to this Defendant as "Sgt. Philomine" and "Sgt. Philomon." [Doc. 14-1 at 33].

[4] The Plaintiff also refers to this Defendant as "Younths." [Doc. 14-1 at 33].

killed or assaulted again. [Doc. 14 at 3, 11]. He seeks compensatory and punitive damages, injunctive relief,[5] and a jury trial. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set

---

[5] The Plaintiff seeks "injunctive relief on jail policy file by Sheriff Eddie Cathey," and the firing and replacement of Defendants Rogers and Dennis. [Doc. 14 at 11]. However, the claim for injunctive relief is vague and conclusory in that the Plaintiff does not identify the specific jail policy that he is challenging. Further, the firing or demotion of employees is a personnel issue beyond the jurisdiction of the Court. See Van Houten v. Gaskill, No. 05-3377, 2006 WL 749410 (D. Kan. March 22, 2006).

3

forth a claim that is cognizable under federal law.  <u>Weller v. Dep't of Soc.</u>

<u>Servs.</u>, 901 F.2d 387 (4th Cir. 1990).

## III.   DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

### A.   Parties

The body of the Amended Complaint refers to individuals who are not named as Defendants in the caption as required by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 10(a).  Such claims are nullities and they are dismissed without prejudice.  <u>See, e.g.</u>, <u>Londeree v. Crutchfield Corp.</u>, 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the complaint but who were served).

Further, the Plaintiff uses pronouns and vague terms, such as "they" and "staff," rather than identifying the individual(s) involved in each allegation.[6]  Such claims are too vague and conclusory to proceed insofar as

---

[6] For instance, the Plaintiff alleges that he was placed in a filthy suicide holding cell by "Jail Staff," but the Court is unable to determine to which Defendant(s) this allegation refers.  [Doc. 14-1 at 30].

4

the Court is unable to determine the Defendant(s) to whom these allegations refer. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Further, to the extent that these allegations refer to non-parties, they are nullities. Londeree, 68 F.Supp.2d 718. Therefore, these claims are dismissed without prejudice.

## B. Excessive Force

The Plaintiff alleges that on July 6, 2021, Defendants Eubanks and Kiker used excessive force against him in separate incidents,[7] and that Defendant Martin failed to intervene. [Doc. 14 at 2, 11]. He further alleges that on on July 28, 2020, Defendants McSheehan, Knox, Grooms, and Hamilton[8] "beat [Plaintiff] down" after he started yelling and kicking his cell

---

[7] The Plaintiff alleges that the incident with Defendant Kiker included five other staff members. It is unclear whether this refers to other Defendants, or to individuals who are not named as Defendants in this case.

[8] In another section of the Amended Complaint, the Plaintiff alleges that, on July 28, 2020, he was assaulted by Defendant Hamilton and five other officers who would not give their names. [Doc. 14-1 at 40]. It is unclear whether these "other officers" include Defendants McSheehan, Knox, and Grooms, and/or other Defendants in this case.

door, and that Defendant Hamilton "abused [Plaintiff] sexually, and violently, touching [him] unappropriately [sic] on [his] private parts" while Plaintiff was being held down.  [Doc. 14-1 at 30].

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389 (2015).  The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one."  Id.  In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. (citing Graham, 490 U.S. at 396).  Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

6

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, and McSheehan used unreasonable force against him, and that Defendant Martin failed to intervene. These claims have passed initial review.

## C. Failure to Protect

The Plaintiff alleges that on February 24, 2020, Defendants Purser and Philemon witnessed an inmate strike the Plaintiff's face with his fist but failed to act [Doc. 14 at 10-11; Doc. 14-1 at 33]; that Defendants Keziah and Dorlando informed other inmates that the Plaintiff is a rapist,[9] and that Defendants Adcock and Panek refused to act [Doc. 14-1 at 6]; that on June 28, 2020, the Plaintiff was placed in a cell with an inmate who was a registered sex offender and who sexually assaulted the Plaintiff[10] [Doc. 14-1 at 33]; Defendants Philemon and Dennis subsequently returned the Plaintiff to the cell block where the assault incident had occurred,[11] knowing that the

---

[9] Although the Plaintiff states that Defendants Dorlando and Keziah "retaliated against [his] rights," this claim is liberally construed as a failure-to-protect claim because he appears to assert that these Defendants purposefully placed him in danger by revealing this information to other inmates. [Doc. 14-1 at 6].

[10] It is unclear to whom the Plaintiff attributes this housing placement.

[11] It is unclear whether the Plaintiff is alleging that inmate Jeter was still located in that cell block, or whether the danger was from gang members who had approached the Plaintiff at the time of the Jeter incident. [See Doc. 14 at 10-11].

7

Plaintiff would be hurt or killed, and that the Plaintiff was subsequently assaulted by another inmate[12] [id.]; and that Defendants Martin, Rogers, and Dennis knew that another inmate had placed a "hit" on the Plaintiff's life[13] but Martin denied Plaintiff protective custody, and consequently the Plaintiff feared for his life [Doc. 14-1 at 40].

The Eighth Amendment[14] imposes on prison officials a duty to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations omitted). To obtain relief under § 1983 on a claim of failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury" resulting from that failure; and (2) the

_____

[12] In response, the Plaintiff hit the inmate over the head with a plastic mop handle in "self-defense." [Doc. 14-1 at 33].

[13] According to the Plaintiff, the victim in his criminal case arranged in a jail phone call for this inmate, who was her boyfriend, to kill the Plaintiff. [Doc. 14-1 at 40].

[14] Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See Moss v. Harwood, __ F.4th __, 2021 WL 5702989, at *7, n.4 (4th Cir. Dec. 2, 2021) (noting that, "under Kingsley…, pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners … [however] the Supreme Court has not extended Kingsley beyond the excessive force context to deliberate indifference claims, … and neither has our court…."); Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021) (declining to decide whether a pretrial detainee must satisfy the subjective component of the Eight Amendment deliberate indifference standard).

prison officials had a "sufficiently culpable state of mind," which in this context is deliberate indifference. <u>Farmer</u>, 511 U.S. at 834. A prison official is "deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows and disregards' the risk." <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004) (quoting <u>Farmer</u>, 511 U.S. at 837). "It is not enough to prove that the official should have known of the risk; instead, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he should draw the inference.'" <u>Kartman v. Markle</u>, 582 F. App'x 151, 153 (2014) (quoting <u>Farmer</u>, 511 U.S. at 837). A showing of negligence does not rise to the level of deliberate indifference. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Plaintiff has minimally stated a claim that Defendants Dennis and Rogers failed to protect him from the planned "hit" by another inmate.[15] However, the remaining allegations

---

[15] The Plaintiff's allegations regarding the Defendants' "sufficiently culpable state of mind" are that the Plaintiff himself informed the Defendants of the alleged "hit" place on the Plaintiff by his alleged victim, and that the Defendants did not investigate. Giving the Plaintiff the benefit of very generous inferences, these allegations pertain only to Defendants Rogers and Denis, but not Defendant Martin. Moreover, the Plaintiff makes no plausible allegations as to how the Plaintiff learned of this proposed "hit" so as to make his telling the Defendants sufficiently credible to warrant any action. The Plaintiff's allegations stretch the plausibility requirements for pleading to near their limit, but the

are insufficient to proceed, as the Plaintiff has failed to allege that he suffered any serious or significant physical or emotional injury as a result of the Defendants' actions or inactions. Therefore, the failure to protect claims have survived initial review as to Defendants Dennis and Rogers, and the remaining failure to protect claims are dismissed without prejudice.

### D. Deliberate Indifference to a Serious Medical Need

The Plaintiff alleges that Defendants Purser and Philemon failed to provide timely medical care after another inmate punched him on February 24, 2020 [Doc. 14 at 10-11]; that Defendant Martin failed to provide assistance after the beating on July 6, 2020 [id. at 2, 11]; that Defendants Knotts and Burns confiscated the Plaintiff's medically approved diabetic socks on April 9, 2020, Defendants Eubanks and Purser failed to correct the issue, and the Plaintiff's feet and toes were injured as a result [id. at 18]; that Defendants Eubanks, Keziah and Dorlando failed to provide timely medical care following the Plaintiff's "violent sexual assault" by his cellmate on July 12, 2020 [Doc. 14-1 at 16].

The Eighth Amendment encompasses a right to medical care for serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).

---

Court will allow this claim to pass initial review with respect to Defendants Rogers and Denis. The Court expresses no opinion as to whether the pleading comports with Rule 12(b)(6).

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852. Further, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Wright v. Collins, 766 F.2d 841, 840 (4th Cir. 1985)).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Plaintiff has plausibly

alleged that Defendants Burns, Dorlando, Eubanks, Keziah, Knotts, Martin, Philemon, and Purser were deliberately indifferent to a serious medical need. These claims have passed initial review.

### E. Due Process

The Plaintiff appears to allege that Defendant Burns falsely wrote the Plaintiff up, Defendant Martin placed him in 20-day lockup despite knowing he had medical restrictions and was disabled, and Defendant Philemon refused to hear his appeal with regard to the April 9, 2020 sock incident [Doc. 14 at 18; 14-1 at 40]; that Defendants Keziah and Dorlando took the Plaintiff to lockup after his cellmate sexually assaulted him on July 12, 2020, even though Plaintiff was the victim [Doc. 14-1 at 16]; that "Corporal K. Martin, was deliberate indifferent advising officer. Gordon, upon Disciplinary all my appeals to Captain. Rogers and L.T. Dennis, denied" [Doc. 14-1 at 15] (uncorrected); Defendant Younts placed the Plaintiff in lockup for 180[16] days following the July 27, 2020 asssault incident, even though the Plaintiff acted in self-defense [Doc. 14-1 at 33]; that Defendants Strickland and Kimball placed the Plaintiff on 30-day lockup without a hearing, disciplinary charge, or any evidence after another inmate falsely accused him of assault on July

---

[16] In another section of the Amended Complaint, the Plaintiff alleges that he received 220 days in lockup for the Scuro incident. [Doc. 14-1 at 15].

12

2, 2021 [Doc. 14-1 at 36]; and that Defendants Martin and Kimball placed him on close security lockup and removed his privileges after he refused an improper direct order on July 6, 2021 [Doc. 14 at 2-3].

Because pretrial detainees have not been convicted of crimes, they retain a liberty interest to remain free from punishment. Dilworth v. Adams, 841 F.3d 246, 251 (4th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. at 535-37). A pretrial detainee is thus entitled to procedural due process in connection with any "punishment" imposed at a detention facility. Id. at 252. A restriction is "punishment" if it was "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Williamson v. Stirling, 912 F.3d 154, 178 (4th Cir. 2018) (quoting Slade v. Hamptons Roads Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005)). Where a pretrial detainee is placed in disciplinary segregation, he is entitled to "notice, a hearing, and a written explanation of the resulting decision." Id. at 175; see Dilworth, 841 F.3d at 253; Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974). Where a pretrial detainee is placed in administrative segregation, he must receive at least an informal, non-adversary review of the information supporting segregation within a reasonable time. Williamson, 912 F.3d at 185; see Dilworth at 255 (a pretrial detainee's placement in administrative segregation

pending a disciplinary hearing "presupposes that there is, in fact, a hearing in connection with the final imposition of disciplinary action….").

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly stated due process claims against Defendants Burns, Dorlando, Keziah, Kimball, Martin, Strickland, and Younts. However, the Plaintiff's allegations against Defendants Dennis, Gordon, Philemon, and Rogers fail to state a claim. The Plaintiff appears to allege that Defendants Dennis, Rogers, and Philemon refused or denied his disciplinary appeals. However, the process required for imposing disciplinary sanctions does not include an appeal, so the denial of such fails to state a § 1983 claim. See Wolff, 418 U.S. at 565 (setting forth the process required for imposing disciplinary sanctions, which does not include a disciplinary appeal); Chambers v. Wilson, No. 1:15-cv-46, 2016 WL 775779, at *4 (E.D. Va. Feb. 24, 2016) ("a prisoner has no federal due process rights in the [disciplinary] appeal process."); Brown v. Angelone, 938 F.Supp. 340, 345 (W.D. Va. 1996) (holding that violations of prison disciplinary appeal procedures do not implicate federal due process rights). The allegations against Defendants Gordon are too vague, conclusory, and confusing to state a claim. See Fed. R. Civ. P. 8(a). Accordingly, the Plaintiff's due process claims have passed initial review against Defendants

Burns, Dorlando, Keziah, Kimball, Martin, Strickland, and Younts, and the remaining claims are dismissed without prejudice.

### F.    Retaliation

The Plaintiff alleges that Defendants Kiker and Eubanks threatened him, Eubanks punched him, and Defendants Martin and Kimball placed him on lockup and removed privileges in retaliation for the Plaintiff's refusal of an improper direct order [Doc. 14 at 2-3]; that Defendants Younts, Martin, and Kimball threatened the Plaintiff and opened his legal mail in retaliation for filing grievances [id. at 3]; that Defendant Younts threatened to "trash" the Plaintiff's legal mail if he continued filing grievances [Doc. 14-1 at 6]; that Defendants Knotts, Burns, Eubanks, Purser, and Martin took away the Plaintiff's medically approved socks and placed him in lockup in retaliation for filing grievances [id. at 18]; and that Defendant Martin refused to provide the Plaintiff with medical assistance while he was injured in retaliation for filing grievances and lawsuits [Doc. 14 at 11].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."  Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).  Prison officials may not retaliate against an inmate for exercising a constitutional right.  See Hudspeth v. Figgins, 584

F.2d 1345, 1347 (4th Cir.1978).  In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct."  Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Burns, Eubanks, Kiker, Kimball, Knotts, Martin, Purser, and Younts retaliated against him.  These claims have passed initial review.

### G.    Mail

The Plaintiff alleges that Defendants Kimball, Martin and Younts stopped the Plaintiff's outgoing mail, and stopped and opened his legal mail [Doc. 14 at 2-3; Doc. 14-1 at 6-7].

As a general matter, prisoners have the right to both send and receive mail.  See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974).   Restrictions on this right are valid if they are reasonably related to legitimate penological interests.  Turner v. Safley, 482 U.S. 78, 89 (1987) (setting forth a four-factor test to determine whether a prison policy is valid); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees).   For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband.  Wolff, 418 U.S. at 576.  "[L]egal mail is widely recognized to be privileged and confidential—even in the context of prisons—which suggests that an incarcerated person's expectation of privacy in his legal mail is one 'that society is prepared to consider reasonable.'"  Haze, 961 F.3d at 660 (quoting United States v. Catellanos, 716 F.3d 828, 832 (4th Cir. 2013)); see King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) ("nothing in Hudson[17] indicates the Supreme court intended to abrogate a prisoner's expectation of privacy beyond his cell.").  A prison rule requiring that legal mail be opened in the presence of

---

[17] Hudson v. Palmer, 468 U.S. 517 (1984) (holding that an inmate has no reasonable expectation of privacy, and thus no Fourth Amendment protection, in his prison cell).

the inmate, without being read, does not infringe on a prisoner's constitutional rights.  See Wolff, 418 U.S. at 575–77.

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Kimball, Martin and Younts interfered with his mail.  This claim has passed initial review.

## H.    Access to the Courts

The Plaintiff alleges that, by breaking the seal on his legal mail, Defendant Younts "deni[ed] [him] legal access to counsel and the courts." [Doc. 14-1 at 6].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts.  The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access.   See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted).  The right of access to the courts requires only that prisoners have the capability of bringing challenges to sentences or conditions of confinement.  See Lewis v. Casey, 518 U.S. 343, 356-57 (1996).  Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.

18

"Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

The Plaintiff fails to allege that he suffered any actual injury as a result of Defendant Younts' actions, and therefore, he has failed to state a plausible claim that he was denied access to the courts. This claim will be dismissed without prejudice.

## I. Conspiracy

The Plaintiff appears to allege that Defendant Martin conspired to stop the Plaintiff's outgoing mail and phone privileges [Doc. 14 at 2; Doc. 14-1 at 7]; that Defendants Rogers and Dennis "conspired together illegally a crime that violated [Plaintiff's] civil rights" [Doc. 14-1 at 7]; that Defendants Purser and Philemon conspired to fail to protect the Plaintiff from other inmates [Doc. 14 at 10]; that Defendants Dorlando and Keziah conspired to inform other inmates that the Plaintiff is a rapist [Doc. 14-1 at 6]; Defendants Panek and Adcock deliberately omitted information from their report on the July 28, 2020 use of force in a "conspiracy, and a cover up" [Doc. 14-1 at 30]; and that there was an "ongoing conspiracy" among Defendants Martin, Dennis,

Rogers, Hamilton, Gordon, Rogers, Dennis to harass the Plaintiff based on his criminal charges [Doc. 14-1 at 15].

To establish a civil conspiracy under § 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 576 n. 6 (4th Cir. 1992). An essential element in any conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Ballinger v. North Carolina Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers does not amount to a conspiracy. Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073 (4th Cir. 1981). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County Okl., 866 F.2d 1121 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804 (5th Cir. 1981). General allegations that defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an

agreement, fail to state a § 1983 conspiracy claim. <u>Wiggins v. 11 Kew Garden Court</u>, 497 F. App'x 262 (4th Cir. 2012).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Adcock and Panek conspired against him by deliberately omitting information from their report on the July 28, 2020 use of force. However, the remaining allegations are too vague and conclusory to establish that any meeting of the minds occurred to deprive the Plaintiff of a constitutional right. Therefore, the Plaintiff's conspiracy claims have passed initial review against Defendants Panek and Adcock, and are dismissed without prejudice as to the other Defendants.

### J. Grievances

The Plaintiff alleges that Defendant Rogers read (and presumably denied) all of his grievances, and that Defendant Dennis rejected his grievance appeals. [Doc. 14-1 at 40].

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." <u>Booker v. S.C. Dep't of Corr.</u>, 885 F.3d 533, 541 (4th Cir. 2017).

Because the Plaintiff had no right to the grievance procedure, his allegations that his grievances and grievance appeals were denied fails to rise to the level of a constitutional violation. Therefore, the Plaintiff's claims relating to the grievance procedure will be dismissed.

### K. Investigations and Criminal Charges

The Plaintiff appears to allege that Defendants Adcock, Dennis, Dorlando, Eubanks, Kimball, Martin, Panek, Rogers, and Strickland failed to investigate various incidents that occurred at UCJ [Doc. 14 at 2; Doc. 14-1 at 6, 15-16, 22, 30, 36] and that Defendants Eubanks, Kimball, Martin, Philemon, Purser, and Strickland failed to allow the Plaintiff to file criminal charges against staff and inmates who assaulted him [Doc. 14 at 2, 10-11; Doc. 14-1 at 22, 36].

"The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). Accordingly, there is no right to have an investigation conducted by the government, including a PREA investigation. See, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim);

<u>Watson v. Smith</u>, No. 5:18-cv-142, 2019 WL 1460263 (W.D.N.C. April 2, 2019) ("There is no private cause of action for a PREA violation and a prisoner has no constitutional right to a PREA investigation); <u>Wise v. Wilson</u>, No. 1:15-cv-1705, 2017 WL 71656 (E.D. Va. Jan 6, 2017) (prisoner has no constitutional right to have a PREA complaint investigated).  Further, "[n]o citizen has an enforceable right to institute a criminal prosecution."  <u>Lopez v. Robinson</u>, 914 F.2d 486, 494 (4th Cir. 1990) (citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973)).  Accordingly, "an inmate does not state a constitutional claim by alleging that he was denied the right to press criminal charges."  <u>Brown v. Rowan Cnty. Det. Ctr.</u>, No. 1:09-cv-573, 2012 WL 5338574, at *6 (M.D.N.C. Oct. 30, 2012).

The Plaintiff had no right to have any investigation conducted on his behalf, or to press criminal charges against the individuals who allegedly assaulted him.  Accordingly, these claims are dismissed for failure to state a claim upon which relief can be granted.

### L.  Jail Policy

The Plaintiff alleges that various incidents violated UCJ policy, including staff's failure to investigate various incidents, Plaintiff's lockup for 220 days, and staff's failure to place another inmate in lockup following his fight with the Plaintiff [Doc. 14-1 at 15, 36].

23

The Plaintiff's allegation of various policy violations does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"). Therefore, the Plaintiff's claims that various Defendants violated prison policy, standing alone, are dismissed.

## M. Equal Protection

The Plaintiff alleges that Defendants Dennis, Philemon, and Purser intentionally failed to protect him from an assault from another inmate because of racial bias [Doc. 14-1 at 33]; that Defendant Martin failed to provide medical assistance following the July 6, 2021 use of force because of "bias" [Doc. 1 at 11];that Defendants Dennis, Gordon, Martin, and Rogers targeted him, harassed him, and treated him "biasly" based on his "pending charges" [Doc. 14-1 at 15]; that Defendants Kimball and Strickland "biasly [sic] … fail[ed] to follow legal procedures" when another inmate accused the Plaintiff of assault [Doc. 14-1 at 36]; and that Defendants Dorlando and Keziah targeted him, harassed him, and failed to provide medical care

following the Plaintiff's sexual assault because the Plaintiff was charged with rape and kidnapping [Doc. 14-1 at 16].[18]

To establish an equal protection violation, a plaintiff first must demonstrate that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Dennis, Dorlando, Keziah, Martin, Philemon, and Purser violated the Plaintiff's right to equal protection. However, the allegations against Defendants Gordon, Kimball, Strickland, and Rogers fail to demonstrate that these Defendants treated the Plaintiff differently from others who are similarly situated, or that this unequal treatment was the result of purposeful discrimination. See Henslee v. Lewis, 153 F. App'x 179,

---

[18] The Plaintiff also generally alleges "deliberate indifferences [sic] based on racial discrimination," but he fails to attribute this allegation to any Defendant. [Doc. 14 at 9].

Case 3:20-cv-00601-MR   Document 18   Filed 01/20/22   Page 25 of 33

180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983). Accordingly, the equal protection claims against Defendants Dennis, Dorlando, Keziah, Martin, Philemon, and Purser have survived initial review, but the remaining claims are dismissed without prejudice.

### N.    Supervisory Liability

The Plaintiff appears to assert supervisory claims against Defendants Cathey, Dennis, Adcock, Martin, Rucker, and Rogers, who knew that the Plaintiff was being retaliated against and failed to act [Doc. 14 at 3; Doc. 14-1 at 6-7. 15] and that Defendants Adock, Cathey, Dennis, and Rucker knew about the interference with the Plaintiff's mail and failed to act [Doc. 14 at 2-3; Doc. 14-1 at 6-7].

"It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between

26

her inaction and the constitutional injury." Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Plaintiff has plausibly alleged that Defendants Adcock, Cathey, Dennis, Martin, and Rogers are liable under a theory of supervisory liability. However, the Plaintiff has failed to state a supervisory claim against Defendant Rucker, a correctional officer, who does not appear to occupy a supervisory role at UCJ. Therefore, the claim against Defendant Rucker will be dismissed without prejudice.

## O.    Supplemental Jurisdiction

Liberally construing the Amended Complaint, the Plaintiff appears to assert claims under North Carolina law for assault and battery and negligence.

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs,

383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 1367(c)(1), (2), and (4).

### 1. Assault and Battery[19]

The Plaintiff appears to assert assault and battery claims against Defendants Eubanks, Kiker, Martin with regard to the July 6 incidents [Doc. 14 at 2, 11]; and Defendants Grooms, Hamilton, Knox, and McSheehan with regard to the July 28 incident [Doc. 14-1 at 15, 30, 40].

North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow. See generally Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981). The Plaintiff's claims of excessive force have passed initial review against Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, Martin, and McSheehan. The Court therefore will exercise supplemental jurisdiction

---

[19] The Plaintiff only refers to assault, but the allegations will be liberally construed as claims of assault and battery, as the Plaintiff alleges that physical contact occurred.

over the North Carolina assault and battery claims against those Defendants at this time.

### 2. Negligence

The Plaintiff appears to assert negligence claims against Defendants Burns, Eubanks, Knotts, Martin, Philemon, and Purser regarding the confiscation of his diabetic socks [Doc. 14 at 18]; Defendants Martin, Dennis, and Rogers for failing to conduct a PREA investigation into his July 28 sexual assault allegation against Defendant Hamilton [Doc. 14-1 at 15]; and Defendants Keziah and Dorlando for failing to provide medical care or conduct a PREA investigation, and taking him to lockup regarding his July 12 sexual assault allegation [Doc. 14-1 at 16].[20]

To the extent that the Plaintiff's related § 1983 claims for deliberate indifference to a serious medical need have passed initial review, the Court will exercise supplemental jurisdiction over the Plaintiff's negligence claims against Defendants Burns, Dorlando, Eubanks, Keziah, Knotts, Martin, Philemon, and Purser Rogers at this time. Because the Defendants had no

_____

[20] The Plaintiff also asserts that he has suffered "mental and physical neglect and deprivation by corrupt Jail Staff…" [Doc. 14-1 at 15]; "cruel and unusual punishment a Eighth Amendment violation prohibiting the use of pain and agony by staff done through neglect spiral acting with a corlapal [sic] state of mind intentionally…" [Doc. 14-1 at 16]; and "mental stress loss of privileges neglect cruel and unusual punishment…" [Doc. 14-1 at 36]. These allegations are too vague and conclusory to proceed and therefore will be dismissed.

duty to conduct a PREA investigation, the Plaintiff's negligence claims based on the Defendants' failure to conduct such an investigation are dismissed.

## IV. CONCLUSION

In sum, Plaintiff has stated plausible claims of: excessive force against Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, and McSheehan; failure to intervene against Defendant Martin; failure to protect against Defendants Dennis, and Rogers; deliberate indifference to a serious medical need against Defendants Burns, Dorlando, Eubanks, Keziah, Knotts, Martin, Philemon, and Purser; due process violations against Defendants Burns, Dorlando, Keziah, Kimball, Martin, Strickland, and Younts; retaliation against Defendants Burns, Eubanks, Kiker, Kimball, Knotts, Martin, Purser, Younts; interference with the mail against Defendants Kimball, Martin, and Younts; conspiracy against Defendants Adcock, Panek; equal protection violations against Defendants Dennis, Dorlando, Keziah, Martin, Philemon, and Purser; and supervisory liability against Defendants Adcock, Cathey, Dennis, Martin, and Rogers have passed initial review. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, Martin, and McSheehan; and negligence claims arising out of the alleged failure to provide medical care by Defendants Burns, Dorlando, Eubanks,

Keziah, Knotts, Martin, Philemon, and Purser.  The remaining claims are dismissed without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint [Doc. 14] has passed initial review: against Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, and McSheehan for the use of excessive force; against Defendant Martin for failure to intervene; against Defendants Dennis, and Rogers for failure to protect; against Defendants Burns, Dorlando, Eubanks, Keziah, Knotts, Martin, Philemon, and Purser for deliberate indifference to a serious medical need; against Defendants Burns, Dorlando, Keziah, Kimball, Martin, Strickland, and Younts for due process violations; against Defendants Burns, Eubanks, Kiker, Kimball, Knotts, Martin, Purser, and Younts for retaliation; against Defendants Kimball, Martin, and Younts for interference with the mail; against Defendants Adcock and Panek for conspiracy; against Defendants Dennis, Dorlando, Keziah, Martin, Philemon, and Purser for equal protection violations; and against Defendants Adcock, Cathey, Dennis, Martin, and Rogers for supervisory liability.

31

2. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Eubanks, Grooms, Hamilton, Kiker, Knox, Martin, and McSheehan; and his negligence claims arising out of the alleged failure to provide medical care by Defendants Burns, Dorlando, Eubanks, Keziah, Knotts, Martin, Philemon, and Purser.

3. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail twenty-one (21) blank summons forms to the Plaintiff for the Plaintiff to fill out and return for service of process on Defendants. The Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on the Defendants. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on the Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to the Plaintiff.

The Clerk of Court is further instructed to mail an Opt-In/Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW and a copy of this Order.

**IT IS SO ORDERED.**

Signed: January 20, 2022

Martin Reidinger
Chief United States District Judge